STATE FARM FIRE AND CASUALTY COMPANY, Appellee,

v.

Lisa Byrd GARRITY, Administratrix of Estate of Judy Rice, Appellant,

and

Freddie B. Rice, Defendant.

No. 85–1227.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 7, 1985.

Decided March 17, 1986.

Douglas B. Abrams (Anna Neal Blanchard, Blanchard, Tucker, Twiggs, Earls & Abrams, P.A., Raleigh, N.C., on brief), for appellant.

Joseph W. Yates, III (Beth R. Fleishman, Yates, Fleishman, McLamb & Weyher, Raleigh, N.C., on brief) for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

ERVIN, Circuit Judge:

This is an appeal from a declaratory judgment that State Farm Fire and Casualty Company is not responsible for fatal injuries inflicted by the insured, Freddie B. Rice, on the decedent, Judy Rice. The district court held that Mr. Rice's conduct fell within the intentional injury exception to policy coverage. The Administratrix of Judy Rice's estate, an intervenor in this action, appeals. The Administratrix argues that State Farm is collaterally estopped from denying coverage under the intentional injury exception by a state court holding that Rice negligently killed his wife. We affirm.

## I.

On November 12, 1980, Freddie Rice shot and killed Judy Rice. In a North Carolina tort suit, the Administratrix won a $65,000 judgment against Mr. Rice for negligently causing Mrs. Rice's death. Theories of intentional or wanton and reckless injury were not litigated in the state tort suit,[1] and State Farm was not a party to that action.

Under its homeowner's policy, appellee State Farm is responsible for defending and satisfying civil claims in personal injury actions against Rice, unless those injuries were expected or intended. When it learned of the North Carolina suit, State Farm suspected that Mr. Rice's conduct might fall within the policy coverage exception. The company elected, however, to supply Mr. Rice with defense counsel under a reservation of rights agreement while it conducted its own investigation.

While the state suit was pending, State Farm filed this declaratory judgment action against Rice, in which it denied responsibility under the intentional injury clause. After she won the state court judgment, the Administratrix intervened in this action. The Administratrix maintained that the state court's finding of negligent injury collaterally estopped State Farm from arguing that the injury was expected or intended. The trial court decided that issue preclusion did not bar State Farm's action, and heard the case. A federal jury then decided that Rice expected or intended injury. His actions were, therefore, outside the policy's coverage. The practical result of this decision is that the Administratrix cannot recover her $65,000 negligence judgment from State Farm.

## II.

North Carolina's preclusion rules govern this action. *See* 28 U.S.C. § 1738 (1982). North Carolina follows the general rule that:

> when the insurer is later sued by the injured person, if the insurer had a right to defend the action against the insured, had timely notice of such action, and defends or elects not to defend, the judgment in such case, *in the absence of fraud or collusion*, is generally binding upon the insurer as to issues which were or might have been litigated therein.

---

1. At oral argument, counsel indicated that the North Carolina jury was not instructed that proof of intentional injury precludes a negligence verdict.

*Strickland v. Hughes*, 273 N.C. 481, 487, 160 S.E.2d 313, 318 (1968) (emphasis in original). *Accord Iowa Mutual Insurance Co. v. Fred M. Simmons, Inc.*, 262 N.C. 691, 695, 138 S.E.2d 512, 514 (1964).

A well recognized exception to this rule, however, is that an insurance company is not collaterally estopped by a negligence judgment when the crucial question for policy coverage, the existence of "expected or intended" injury, was not actually litigated in the initial lawsuit. *See Farm Bureau Mutual Automobile Insurance Co. v. Hammer*, 177 F.2d 793, 799–801 (4th Cir.1949), *cert. denied*, 339 U.S. 914, 70 S.Ct. 575, 94 L.Ed. 1339 (1950). North Carolina has never addressed this exact exception, but it has been adopted by several of her sister states in closely analogous cases. *See, e.g., Alabama Farm Bureau Mutual Casualty Insurance Co. v. Moore*, 349 So.2d 1113 (Ala.1977); *Glens Falls Insurance Co. v. American Oil Co.*, 254 Md. 120, 254 A.2d 658 (1969); *Kelly v. Cherokee Insurance Co.*, 574 S.W.2d 735 (Tenn. 1978). Our decision, therefore, hinges on extrapolation of North Carolina's position.

Appellant argues that North Carolina should ignore the exception in favor of the rule adopted by Massachusetts in *Miller v. United States Fidelity & Guaranty Co.*, 291 Mass. 445, 197 N.E. 75 (1935). In *Miller*, the Massachusetts Supreme Judicial Court noted the problem of inconsistent judgments when negligence is declared in the first suit and intentional injury is declared in the second. *Id.* at 447–48, 197 N.E. at 76–77. The court's solution was to force the insurance company to choose between defending the first suit and abandoning the insured. *Id.* at 448, 197 N.E. at 77. Regardless of the company's choice, it would be bound by issues decided in the first suit that were material to policy coverage. *Id.* The goal of this position is to minimize inconvenience to the insured and the plaintiff and maximize judicial efficiency. *Id.*

*Miller* is fatally flawed, however, because it sacrifices the insurance company's right to a day in court on the altar of judicial economy. *See Glens Falls*, 254 Md. at 134, 254 A.2d at 665–66. In *Hammer*, a case requiring ascertainment of Virginia law, this court explained that *Miller* does not serve the fundamental principles supporting collateral estoppel. *Hammer*, 177 F.2d at 799. In a typical case, the insurance company is estopped because it is in privity with the insured. The interests of the company and the insured in opposing the plaintiff's claim are identical. *Id.* When the insured is sued for negligence and the insurance company believes the injury was intentional, however, the interests of the insurer and the insured diverge. *Id.* at 800–01. The insured will not advance an intentional injury argument because such a course will increase his personal culpability. *See Kelly*, 574 S.W.2d at 738. The insurer cannot advance the position because it is not a party to the action, and under North Carolina law, it cannot become a party. *See Strickland*, 273 N.C. at 489, 160 S.E.2d at 319. Furthermore, the plaintiff may choose to disregard an intentional injury theory if she knows that the only source of damages is insurance coverage for negligence. Faced with this situation, the insurance company's best opportunity to advance its position lies in a separate declaratory judgment action. In *Hammer*, this court permitted such an action.

### III.

We are convinced that the *Hammer* approach is not only fair but also consistent with existing North Carolina law. On two occasions, North Carolina has permitted an insurance company to litigate similar coverage exceptions after conclusion of the initial lawsuit. In *Jackson v. Maryland Casualty Co.*, 212 N.C. 546, 193 S.E. 703 (1937), the court held that an insurance company could assert an intentional injury defense to policy coverage in a separate suit which was brought to collect a negligence judgment. The court paid lip service to automatic preclusion of an intent-based denial of coverage, but it adopted a case-by-case approach in which the evidence and the course of prior proceedings determined the propriety of preclusion. *Id.* at 548, 193

S.E. at 704. Because the initial complaint and the trial testimony indicated some merit to the intentional injury theory, the court permitted the insurer to litigate the policy coverage issue. *Id.* at 549, 193 S.E. at 705.

*Jackson* is not dispositive because in that case intentional injury was alleged in the initial action, while in the case at bar, it was not. This difference, however, makes our argument against issue preclusion all the more compelling. In the initial *Jackson* litigation, the jury decided that although the insured's intent to injure was sufficient to put him outside the scope of his employment, he was guilty only of negligently inflicting injury. *See Jackson v. Scheiber,* 209 N.C. 441, 184 S.E. 17 (1936). The issue of intent, therefore, was fully litigated with an ultimate finding of mere negligence. Nevertheless, the court permitted the insurer to raise the intentional injury question again. In the case at bar, the intentional injury question has never been directly addressed. If North Carolina's dedication to guaranteeing every litigant a fair hearing extends to permit reexamination of an issue actually litigated in *Jackson,* it should extend to permit State Farm to raise a question avoided in the first action.

North Carolina's likely adherence to the *Hammer* approach is also supported by *Strickland,* 273 N.C. 481, 160 S.E.2d 313. In *Strickland,* the court prevented an insurance company from intervening in the initial tort suit to assert a "fraud and collusion" defense to policy coverage. The court explained that the insurance company's proper course was to defend under a reservation of rights agreement, *id.* at 487–88, 160 S.E.2d at 318, and to raise its policy coverage defense in a subsequent action. *Id.* at 490, 160 S.E.2d at 320. The company would not be collaterally estopped by the initial judgment, in part because its defense "could not be raised and determined in the original action because defendant refused to raise it in his answer." *Id.* at 488, 160 S.E.2d at 318. State Farm faces a similar dilemma in this case and deserves similar relief from issue preclusion.

In an ideal world, the policy coverage question would be adjudicated before the state tort suit is tried. *Cf. Stout v. Grain Dealers Mutual Insurance Co.,* 307 F.2d 521 (4th Cir.1962) (Declaratory judgment on coverage before state wrongful death litigation is completed is appropriate.). Such a course of action is not always possible, however. We refuse to hold that if the insurance company loses the race to the courthouse and the plaintiff elects not to argue intentional injury, the company will be bound by the initial negligence determination. Considerations of judicial efficiency should not be stretched to bind State Farm to the result of a proceeding in which it was not in true privity with its insured and its unique interests were not represented. We therefore hold that State Farm is not collaterally estopped from asserting its intentional injury argument in this case. Accordingly, the district court judgment is affirmed.

AFFIRMED.